Arthur **MARCUS**, Appellant

v.

**UNITED STATES** of America, Appellee.

No. 14013.

United States Court of Appeals Third Circuit.

Argued Oct. 19, 1962.

Decided Nov. 28, 1962.

Joseph A. Rosenthal, Wilmington, Del., (Cohen & Morris, Wilmington, Del., on the brief), for appellant.

Joseph Corey, Special Attorney, Dept. of Justice, Washington, D. C. (Herbert J. Miller, Jr., Asst. Atty. Gen., Alexander Greenfeld, U. S. Atty., on the brief), for appellee.

Before McLAUGHLIN and HASTIE, Circuit Judges, and DUMBAULD, District Judge.

DUMBAULD, District Judge.

Appellant, Arthur Marcus, a resident of Massachusetts, was called as a witness before a federal grand jury at Wilmington, Delaware, on April 2, 1962. He was advised of his rights under the Fifth Amendment, and thereupon refused to answer, relying upon his constitutional privilege against self-incrimination, when asked if he had been investigated by the Massachusetts Crime Commission in 1957 and whether he had in 1955 appealed to the Massachusetts Public Utilities Commission because the telephone company had refused to install twelve telephones in his office, and when asked many other questions. He frequently left the grand jury room to consult with counsel in the corridor, but refused to answer any questions, except for a few questions as to his height, weight, age, and marital status, concerning which he added the comment that in his or his counsel's opinion such questions were not germane to the inquiry.

The questions asked plainly showed that the inquiry was concerned, *inter alia,* with unlawful use of telephones to transmit gambling information.

Government counsel on the same date applied to the Court, for an order directing the witness to answer questions, in exchange for the immunity conferred by 47 U.S.C. § 409(*l*), which provides:

"No person shall be excused from attending and testifying or from producing books, papers, schedules of charges, contracts, agreements, and documents before the Commission, or in obedience to the subpena of the Commission, whether such subpena be signed or issued by one or more commissioners, or *in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of this chapter,* or of any amendments thereto, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture; but *no individual shall be prosecuted* or subjected to any penalty or forfeiture *for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege* against self-incrimination, *to testify* or produce evidence, documentary or otherwise, except that any individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying." (Italics supplied)

This provision is Section 409(a) (i) of the Communications Act of June 19, 1934, 48 Stat. 1064, 1097, renumbered as Section 409(*l*) by the Act of July 16, 1952, 66 Stat. 710, 722. The only variation between the two texts is that "chapter" is substituted for "Act" in the U.S.C. version. The provision is therefore applicable in any criminal proceeding involving alleged violation of the Communications Act.

After hearing and argument, the Court on April 17, 1962, entered an order granting the application for immunization of the witness, who, together with the grand jury, appeared in open court on April 18, 1962, at which time the Court explained the situation and said, *inter alia*, "Mr. Marcus, I order you to answer completely and truthfully all questions propounded to you in the course of you[r] forthcoming appearance before the grand jury." (Tr. 99; 40-A).

This language of the court is to be read in context with the request of the Government attorney indicating the scope of the questions to be asked and of the inquiry itself. Above all it should be remembered that the dispositive factor as to the court's direction is that the questions which were actually asked of appellant were directly within the purview of the investigation.

Within less than an hour the attorneys were in Chief Judge Wright's chambers, reporting that the witness was still recalcitrant. To comply with the notice provisions of Criminal Rule 42(b), a hearing in open court was held at which the Court permitted the reporter to read the questions and answers of the witness before the grand jury. This record showed that on being asked questions he refused to answer, after having repeatedly consulted counsel in the corridor. A hearing for trial on the contempt charge was set for the following day.

On April 19, 1962, Marcus was tried for contempt, without a jury. The reporter testified from his notes, reading the questions and answers before the grand jury. There was no other testimony, but Marcus contended that the immunity statute was inapplicable or unconstitutional. Judge Wright thereupon found the defendant guilty of contempt, and after the usual ritual [see Green v. U. S., 365 U. S. 301, 304–305 (1961)] imposed a six months sentence (indi-

cating that within sixty days the sentence could be reduced if Marcus testified). The District Court denied bail pending appeal, but this Court, after a hearing before Chief Judge Biggs on the same day (and subsequently by order of April 24, 1962) enlarged Marcus on $15,000 bail, with permission to return to Massachusetts. The matter is now before us on an appeal by Marcus from the sentence.

■■ Appellant's position is utterly without merit. It is elementary that a grand jury is an arm of the court, and that refusal to comply with an order of court directing a witness to answer proper questions before the grand jury is a contempt of court. Since the refusal was persisted in even when the witness was afforded a *locus poenitentiae* and brought before the Court, where the situation was explained fully to him, the refusal was a contempt committed in the actual presence of the court and punishable summarily and without a jury trial in accordance with Criminal Rule 42(a). Brown v. U. S., 359 U. S. 41, 49–51, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); Levine v. U. S., 362 U. S. 610, 617, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960).

■ A witness is of course entitled to his constitutional right under the Fifth Amendment. But if an immunity is granted him by statute, as extensive as his privilege (or, as here, more extensive) he may be compelled to testify. Brown v. Walker, 161 U. S. 591, 594, 597–601, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Counselman v. Hitchcock, 142 U. S. 547, 585–586, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); Hale v. Henkel, 201 U. S. 43, 67, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Heike v. U. S., 227 U. S. 131, 141, 33 S.Ct. 226, 57 L.Ed. 450 (1913).

■■ The immunity conferred by the statute involved here, like that in Brown v. U. S., supra, is the automatic statutory consequence of compulsory testimony.[1] The immunity is as extensive

---

1. The immunity provision of the Communications Act is self-executing, unlike the provisions of 18 U.S.C. § 3486 or 18 U.S.C. § 1406, where obtaining a court order is a necessary condition precedent to the grant of immunity. Ullman v. U.

as the testimony. The contention is groundless that the immunity conferred is limited to proceedings based upon or growing out of the Communications Act.[2] As stated in Brown, the reference to that Act "limits only the class of witnesses to whom the immunity will attach, not the scope of the immunity conferred." 359 U.S. at 47, 79 S.Ct. at 544, 545, 3 L.Ed.2d 609.

Indeed the facts in the Brown case are so closely parallel to those in the case at bar that petitioner's appeal is well-nigh frivolous.[3]

 Does appellant fall within "the class of witnesses" to whom the statutory immunity under 47 U.S.C. § 409(*l*) attaches? Plainly the answer must be in the affirmative.

The class is described as being composed of persons compelled to testify "in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of this [Communications] Act." [4]

Obviously a grand jury proceeding is a "proceeding" ("criminal" in nature) un-

der this language. Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Levine v. U. S., 362 U.S. 610, 617, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960); see also 359 U.S. at 46, 79 S.Ct. at 544, 3 L.Ed.2d 609.

 Was the proceeding one involving the Communications Act?

Obviously the grand jury under its general powers could investigate within a wide field, dealing with violations of many statutes, including the Communications Act.

But the authorization appointing Joseph Corey as a Special Attorney and authorizing him to take part in grand jury proceedings in the District of Delaware referred specifically to "the Federal Communications Act, transmission of gambling information" and kindred offenses. When Mr. Corey came into court on April 2, 1962, he informed the Court that: "The grand jury is inquiring into violations under statute [18 U.S.C.] 1084, under the transmission of interstate wagering information; also under * * [various other statutes including] the

S., 350 U.S. 422, 431–433, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Reina v. U. S., 364 U.S. 507, 509, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960). If, as appellant alleges, the District Court here has no statutory jurisdiction (in analogy to the procedure under 18 U.S.C. § 3486) to make the order of April 17, 1962, the consequence is merely that such order is surplusage and the conviction is to be sustained for violation of the order of April 18, 1962, which the Court had inherent power to make regardless of statutory authorization. There was also power under 18 U.S.C. § 401 to punish for this type of contempt.

2. Equally unfounded is appellant's assumption that his testimony must be limited to violations of that Act, and that the Court should not have directed him to answer *all* questions. A witness cannot control the scope of a grand jury investigation or challenge the relevancy of questions asked. Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Nelson v. U. S., 201 U.S. 92, 115, 26 S.Ct. 358, 50 L.Ed. 673 (1906).

3. Perhaps the appellant in Brown had a stronger case than here, because the im-

munity provision of the Interstate Commerce Act is contained in Part I thereof, and was made applicable to Part II thereof by incorporation by reference. See 359 U.S. at 44, 79 S.Ct. at 543, 3 L.Ed.2d 609. The immunity provision of the Communications Act is direct and self-contained. Since in Brown, as here, a claim of privilege was made *in limine*, nothing turns on the distinction between pre-1933 immunity provisions such as that in the Interstate Commerce Act and those like 47 U.S.C. § 409(*l*). See U. S. v. Monia, 317 U.S. 424, 429–430, 63 S.Ct. 409, 87 L.Ed. 376 (1943); and Smith v. U. S., 337 U.S. 137, 147–148, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). In the case of statutes of the latter type, the scope of the immunity is determined by acceptance of the witness's claim for immunity at the time it is made. U. S. v. Onassis, 125 F.Supp. 190, 201 (D.C.1954).

4. Hence it is the "proceeding", not necessarily the indictment or indictments resulting therefrom, which must be based upon the Communications Act. The indictments might deal with income tax violations, conspiracy charges, or various other offenses.

Federal Communications Act, if I haven't already mentioned it." (Tr. 2).

The nature of the questions themselves which Marcus refused to answer plainly shows that unlawful use of telephone communication in connection with gambling and racketeering was involved.

In the light of these specific declarations, the government could not later contend that the Communications Act was not within the scope of these grand jury proceedings.

Of course there is no immunity earned until Marcus in fact testifies. So long as he refuses to testify he is still subject to prosecution, if the government can make out a case against him by other evidence than his own. But so soon as he testifies, under compulsion of the Court's order, he automatically will receive immunity, from both federal and State prosecution, for any matter or thing concerning which he in fact testifies, so long as his testimony is not volunteered but is elicited by questions which the Court has ordered him to answer. This would include matters affecting his income tax liability or any other matters brought out as part of the grand jury inquiry. It is of course the task of the government attorneys to ensure that the witness is not given an immunity broader than is necessary and expedient to advance the important objectives of the grand jury's investigation.

■ One further argument advanced by appellant remains to be noticed. It is contended that the immunity provision of the Communications Act is repugnant to the terms and policy of 18 U.S.C. § 1084 which penalizes interstate transmission of gambling information. That legislation, it is said, aims at aiding State authorities in their task of repressing gambling. Therefore it is incongruous that action by a federal grand jury should have the effect of conferring immunity against State prosecution. Attention is directed by appellant to 18 U.S.C. § 1084(c) which provides:

"Nothing contained in this section shall create immunity from criminal prosecution under any laws of any State, Commonwealth of Puerto Rico, territory, possession, or the District of Columbia."

But it is plain that this provision merely declares that "this section" [i. e., 18 U.S.C. § 1084] shall not have the effect of conferring immunity from State prosecution. It does not derogate from the effects of other statutes (such as the Communications Act and many others) which do confer immunity. Where immunity is so granted, of course by virtue of the Supremacy Clause it supersedes and takes precedence over State law and policy with respect to prosecution of gamblers. Reina v. U. S., 364 U.S. 507, 511–512, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960).

■ In his reply brief (p. 13) appellant contends that his "compelled testimony presumably would be turned over to the states to enable the states to prosecute other persons who may have violated the states' gambling laws." This if so would be none of appellant's concern. His constitutional rights under the Fifth Amendment, and the corresponding immunity derived therefrom, cannot be used by him to protect other parties. Hale v. Henkel, 201 U.S. 43, 69, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Rogers v. U. S., 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951). For example, the grand jury might well have occasion to indict a telephone company for various possible violations of the Communications Act growing out of service furnished to appellant in connection with gambling activities. But appellant would have no legal right to hinder or obstruct such action. He is not entitled by the Constitution to claim the privilege of silence in order to shield his associates or those with whom he has had dealings.

There is no merit in any of the arguments advanced by appellant. The judgment of the District Court will be affirmed.