UNITED STATES of America

v.

Philip Charles TESTA, Appellant.

No. 14655.

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1963.

Decided Nov. 8, 1963.

On Denial of Rehearing Jan. 14, 1964.

As Amended Jan. 31, 1964.

Certiorari Denied Feb. 24, 1964.

See 84 S.Ct. 701.

Biggs, Chief Judge, and Kalodner, Circuit Judge, dissented from denial of a petition for rehearing.

Jacob Kossman, Philadelphia, Pa., for appellant.

Isaac S. Garb, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before STALEY, HASTIE and SMITH, Circuit Judges.

PER CURIAM.

Pleading privilege against self-incrimination, appellant refused to answer certain questions put to him as a witness before a grand jury. Brought before the court below, he persisted in this refusal despite the court's explanation to him that pursuant to 47 U.S.C. § 409(*l*), he would be immune from any prosecution by reason of any testimony he might give. After the appellant in the presence of the court had categorically refused to obey the court's command, the court ordered him committed to prison until he should purge himself by obeying the court. This appeal followed.

In the light of our decision in Marcus v. United States, 310 F.2d 143 (C.A.3, 1962), we find no merit in any of the arguments advanced by appellant. Accordingly, the judgment will be affirmed but without prejudice to the right of the appellant to apply to the district court for such relief as may be necessary and proper in the light of any events which have occurred since the imposition of sentence.

Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

On Petition for Rehearing

PER CURIAM.

Upon consideration of the petition for rehearing in this case and the government's reply thereto, the petition for rehearing will be denied.

KALODNER, Circuit Judge (dissenting).

The appellant was brought before the District Court because of his refusal to

answer certain questions as a Grand Jury witness on the ground of self-incrimination. In a brief hearing the Assistant United States Attorney asserted that since the questions "obviously" related to possible violation of 47 U.S.C. § 501, the witness was immune to prosecution under 47 U.S.C. § 409(l). The District Judge thereupon directed the appellant to answer the questions of the United States Attorney. Counsel for the appellant said that the latter had previously told him that he did not intend to answer the questions. The Court then asked appellant his intention, to which he replied: "I refuse to answer any more questions, Your Honor." Thereupon, the Court held him in contempt and directed that he be committed until he purge himself. This occurred on October 25, 1963. After the appeal was taken the District Judge filed a certificate under Rule 42(a), F.R.Crim.P. The appeal was especially listed for argument on November 6, 1963. On November 1, 1963, the same grand jury returned an indictment against the appellant, charging him with conspiracy to violate 18 U.S.C. § 1952 and travelling in interstate commerce in violation of 18 U.S.C. § 1952. This indictment was brought to the attention of this Court in the brief for the appellant.

On November 8, 1963 in a per curiam opinion, this Court affirmed the District Court's judgment in the light of Marcus v. United States, 310 F.2d 143 (3 Cir. 1962), cert. den. 372 U.S. 944, 83 S.St. 933, 9 L.Ed.2d 969 (1963). It added, however, that such affirmance is "without prejudice to the right of the appellant to apply to the district court for such relief as may be necessary and proper in the light of any events which have occurred since the imposition of sentence." On the same day the appellant applied to the District Court for relief, based upon the subsequent indictment, but such relief was immediately denied.[1]

All of this information comes from the record on the appeal in this case, supplemented by the Petition for Rehearing, and the Answer filed by the Government, which includes a copy of the indictment.

The per curiam opinion of this Court in this appeal suggests, if it does not direct, that appellant should apply to the District Court for relief based on the indictment filed after he was held in contempt. But whether this was necessary or desirable is itself questionable. cf. Bartone v. United States, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 (1963).

Implicit in the Court's per curiam opinion, is its holding that the filing of the indictment subsequent to the contempt adjudication, (fully argued at the hearing of the appeal as the Government concedes in its brief), was not of such proportion as to compel vacation of the contempt commitment.

I do not agree with the view expressed in our per curiam opinion that Marcus is dispositive here, since the indictment which followed the contempt commitment, which is clearly before us on this appeal, distinguishes the instant case from Marcus. The circumstance of the indictment presents a novel, substantial issue which compels specific disposition by this Court. Pertinent is the expression of Mr. Justice Douglas (concurred in by Mr. Justice Black) in his dissenting opinion in Piemonte v. United States, 367 U.S. 556 at pages 565–566, 81 S.Ct. 1720, at pages 1725–1726, 6 L.Ed.2d 1028 (1961):

"Once an indictment was returned, the proceedings of this grand jury became a part of a criminal prosecution directed against petitioner. Counselman v. Hitchcock, 142 U.S. 547, 562, [12 S.Ct. 195, 35 L.Ed. 1110]; United States v. Monia, 317 U.S. 424, 427 [63 S.Ct. 409, 87 L.Ed. 376]. When the citizen is formally accused by indictment, he has

1. A separate appeal from that order was taken at our No. 14,674, but the appeal was dismissed for want of jurisdiction in the District Court to act since the man-

date of this Court had not issued with respect to our opinion of November 8, 1963.

a constitutional right to stand mute and to refuse to testify. His right not to take the stand in a federal criminal trial transcends his privilege against self-incrimination. No immunity statute, no pressure of government, no threats of the prosecution can be used to deprive the citizen of this right. See Wilson v. United States, 149 U.S. 60 [13 S.Ct. 765, 37 L.Ed. 650]; Stewart v. United States, 366 U.S. 1 [81 S.Ct. 941, 6 L.Ed.2d 84]. And it is unthinkable that a district judge would ever hold a defendant in contempt because he refused to take the stand at his own trial. The district judge did no such thing here. But that was the posture of the case when it was decided by the Court of Appeals. For by then the matters about which the petitioner refused to answer had become in form and in effect an indictment against him. "There is no power in our free society to compel a person to talk about a matter on which he has been indicted or to penalize him for failure to do so. We might as well say that an accused can be committed for contempt for failure to take the stand at his own trial.

"We are advised that after we granted certiorari the indictment against petitioner was dismissed on motion of the Government for lack of evidence. That seems irrelevant. The truth is that the grand jury before which petitioner was summoned did indict him. Petitioner was in fact held in contempt for refusal to testify in a criminal proceeding against him. That is not permissible under the procedures of our free society, whatever may have been the ultimate fate of that criminal proceeding."

It must be observed that the majority opinion in Piemonte did not advert to the fact that there an indictment had been returned after the contempt commitment, presumably because the indictment pending when certiorari was granted, had been dismissed on the government's motion prior to the Supreme Court's disposition. Since in the instant appeal the indictment which followed the contempt commitment is still pending, the views expressed by Justices Black and Douglas are assuredly of sufficient significance and weight to require their consideration by this Court. For my part, I am in accord with the views of Justices Black and Douglas.

I am further of the opinion that this Court should give merited consideration to the very substantial question as to whether Marcus is dispositive here for these further reasons:

In Marcus, we noted particularly that, "The questions asked plainly showed that the inquiry was concerned, *inter alia*, with unlawful use of telephones to transmit gambling information," and that, "The nature of the questions themselves which Marcus refused to answer plainly shows that unlawful use of telephone communication in connection with gambling and racketeering was involved." 310 F.2d, at pp. 145, 148.[2] In this case, the questions put to the appellant were not self-revealing; he was asked whether he owned, rented or visited a summer place in New Jersey, whether he made certain specific calls to specific numbers, and, as to some, whom he spoke to and the purpose. Nothing is apparent from these questions, least of all that they concerned any alleged violation of the Federal Communications Act, as in Marcus.

Immunity is granted by 47 U.S.C. § 409(*l*) only when the testimony is elicit-

2. Indeed, the record in the Marcus case discloses explicit questions as to whether the witness used his telephone service in connection with interstate gambling operations; whether he used his telephone service to transmit or receive race re-

sults; and whether he was aware that the tariff filed by his telephone company states that service is furnished subject to the condition that it will not be used for an unlawful purpose.

ed in "any cause or proceeding * * * based upon or growing out of any alleged violation of [the Federal Communications Act]." See Marcus, 310 F.2d at p. 145. Since the Fifth Amendment is properly asserted when a witness is first called upon to give an answer which may tend to incriminate him, it seems to me that a witness may not be shorn of his constitutional privilege unless it is clear that co-extensive immunity will result. For, judged at the time immunity is asserted as a defense to a prosecution, it might not be found to exist if for no reason other than the want of substantial relation. See United States v. Onassis, 125 F.Supp. 190 (D.C.D.C.1954); Note, The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope, 72 Yale L.J. 1568 (1963); and also, In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631 (D.C. Cir. 1962).

Here, the appellant could properly rely on the Fifth Amendment to refuse to answer the questions put to him. This is not questioned by the Government. An answer could well form a link in the chain of evidence against him with respect to 18 U.S.C. § 1952, one of the objects of this Grand Jury's investigation as declared by the Government counsel. Section 1952 does not contain an immunity provision.

However, I am not prepared to say that the mere declaration by Government counsel that one of the purposes of the investigation concerns violations of the Federal Communications Act affords a sufficient basis upon which the immunity provision of the Act may be invoked to deprive the appellant of his constitutional privilege. In my view the questions put to the appellant do not advance the Government's claim that immunity would necessarily or even most probably apply. In Marcus, despite the rather broad language of the opinion, we were evidently satisfied that the nature of the questions left no doubt as to the object of the inquiry. The instant case falls far short of Marcus in this respect.

Further, it is not clear by any means how the Federal Communications Act is here involved.

The record discloses that before the Grand Jury the appellant was advised by Government counsel that, "The Grand Jury is inquiring into the following matters: One, possible violations of the law of the United States which prohibits travel or the use of any facility such as telephone in connection with any extortion in violation of the laws of the State of Pennsylvania and New Jersey. The Grand Jury is also inquiring into any possible conspiracy to violate that law, and also any violations or conspiracies to violate Title 47 of the United States Code, § 501, which is part of the Federal Communications Act which makes it an offense to use any telephone, facility— any telephone—for an unlawful or illegal purpose."

The appellant could well understand how his answer to a question concerning his telephone number, or whether he placed a particular telephone call to another number and to whom he spoke, might tend to incriminate him under 18 U.S.C. § 1952, but not as to 47 U.S.C. § 501. The latter statute does not directly make it an offense to use the telephone for an illegal conversation.

It is plain from the argument of the Government in Marcus, as well as from the indictment here involved (only count 8 of which concerns the Federal Communications Act but does not charge appellant with such violation) that the theory of the Government is as follows: 47 U.S.C. § 501 makes it unlawful for anyone knowingly and wilfully to do or cause or suffer to be done that which is prohibited by the Act; § 203 of the Act requires a telephone company (a "carrier") to file a tariff, prohibits the company from engaging in communication unless a tariff is filed, and also prohibits it from extending to any person any facility or privilege except as specified in the tariff; since the company's tariff, as filed, in some manner restricts its service or facility to exclude unlawful purposes,

one who knowingly and wilfully uses a telephone service for unlawful purposes may come within § 501.[3]

I have two reservations which are, to me, stumbling blocks to the acceptance of our conclusion in this case. First, unlike Marcus, the questions here involved do not in any way whatsoever show any alleged violation of the Federal Communications Act. And the mere use of a telephone for interstate communication does not, *ipso facto*, involve that Act. Second, if the Government is here suggesting that an illegal conversation over the telephone, i. e., a conversation in violation of 18 U.S.C. § 1952, for example, puts the telephone company in violation of its tariff so that the user is in violation of 47 U.S.C. § 501 as well as 18 U.S.C. § 1952, then the Government is going beyond Marcus, or any other case I have been able to find, and a new issue is *presented not reached* by our Marcus decision. I seriously question whether a single telephone call, or even sporadic telephone calls, as distinguished from the *regular* use of a telephone service for, say, the transmission of wagering information or other unlawful purposes as in Marcus, "causes" the telephone company to provide an unlawful service so as to put the one who makes the calls within § 501.

Here, as in Marcus, appellant contends that the immunity granted by 47 U.S.C. § 409(*l*) is not coextensive with his privilege under the Fifth Amendment because the immunity is not applicable to state prosecution. In Marcus we rejected that contention relying on Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960). However, a different statute, the Narcotic Control Act, 18 U.S.C. § 1406, was there involved. In holding that § 1406, granted immunity from state prosecution the Supreme Court concluded that its *specific* provision that the compelled testimony shall not " 'be used as evidence in *any* criminal proceeding * * * against him in *any* court' * * * " covered both federal and state courts. 364 U.S. at p. 510, 81 S.Ct. at pp. 262, 263, 5 L.Ed.2d 249. In Marcus we apparently did not consider that the specific statutory language, to wit, "in any court" relied upon by the Supreme Court in Reina is *not* contained in 47 U.S.C. § 409(*l*).[4]

It compels observation that in Reina the Supreme Court chose to premise its holding that state immunity was granted by the specific terms of § 1406, and not on the holding, in that case, by the District Court and the Court of Appeals that assuming only federal immunity was granted by the statute that United States

3. Neither below, nor in this Court, is this spelled out by the Government. Before the Grand Jury and the District Court the Government merely stated that 47 U.S.C. § 501 made it unlawful to use the telephone for an unlawful purpose. In this Court, in its Answer to the Petition for Rehearing, the Government stated, "It is alleged that the indictment and the questions asked petitioner [appellant] clearly show the use of interstate telephones for the purpose of extortion which would be an unlawful use of the said telephones *and a violation of the tariff filed in the Federal Communications Commission by the telephone company.*" (Emphasis added.) The tariff is not in evidence in this case.

Of course, the indictment was not before the District Court when it held the appellant in contempt. I do not agree that the questions asked of the appellant here show the use of interstate telephones for the purpose stated.

4. For comparison, the relevant portions of the two statutes are here set out: 18 U.S.C. § 1406 " * * * But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court."

47 U.S.C. § 409(*l*): " * * * but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, *documentary or otherwise,* * * *."

v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (1931) had settled that the Fifth Amendment does not protect a federal witness from answering questions which might incriminate him under state law.

It is not without significance and relevance here that the Supreme Court in premising its decision on the statutory language instead of Murdock said in Reina:

"Petitioner contends that Murdock should be re-examined and overruled. We have no occasion to consider this contention, since in our view § 1406 constitutionally grants immunity from both federal and state prosecutions." 364 U.S. 510, 81 S.Ct. 262, 263, 5 L.Ed.2d 249.

In two other immunity statute cases which preceded Reina, the Supreme Court also premised their holding that they granted state as well as federal immunity on the specific statutory provision in each that the use of the compelled testimony could not be used " * * * in any criminal proceeding * * * in any court * * *." See Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), and Adams v. Maryland, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954). In Ullmann, the critical statute was the Immunity Act of 1954, 68 Stat. 745, 18 U.S.C.A. § 3486; and in Adams, the predecessor Immunity Act of 1948, 62 Stat. 833, 18 U.S.C.A. § 3486.

I do not think that it is judicial impertinence to venture the opinion that implicit in the Supreme Court's premising of its disposition in Reina, Ullmann and Adams on the circumstance that the immunity statutes there concerned extended immunity to state offenses by reason of the statutory provision "in any court" is the evidencing of a change in doctrinal trend from earlier decisions that the Fifth Amendment affords no protection against self-incrimination of a state offense when testimony is compelled under federal immunity statutes sans express statutory provision against

the use of such evidence "in any criminal proceeding * * * in any court."

In the instant case, especially since inquiry into violations of 18 U.S.C. § 1952 was an express objective of the Grand Jury investigation, and appellant has been indicted under that statute, involving as it does extortion under state law, the risk of state prosecution is genuine. Accordingly, we must here go further than Marcus: we must hold that the omission from § 409(l) of the critical words "in any criminal proceeding * * * against him in any court" contained in the statute involved in Reina is without relevance, or we must decide that the privilege of the Fifth Amendment does not protect a federal witness from answering questions which might incriminate him under state law. These issues are squarely posed by the instant case. The former was not an issue, and the latter was expressly left open, in the Reina decision. I do not believe either can or should be disposed of on the basis of Marcus, nor do I believe either should be disposed of by silence.

Finally, I have substantial reservations that a contempt was committed in the presence of the court and which the court should have dealt with under Rule 42(a), F.R.Crim.P. The certificate filed by the District Court pursuant to that rule recites that the appellant was directed to return to the Grand Jury and answer the questions propounded, and that the appellant stated he would refuse to answer those questions or any more questions. The transcript of the record, however, discloses that the District Court directed appellant to "answer the questions of the United States Attorney." Counsel for appellant repeated to the Court that appellant had told him, rather than go to the Grand Jury room and return, that he did not intend to answer the questions. The District Court then inquired of appellant whether "it is your intention to refuse to answer the questions directed to you by the United States Attorney?" to which appellant replied, "I refuse to answer any more questions, Your Honor." Appellant was then held

in contempt and committed. I have substantial reservations that the *intention* of appellant to refuse to answer if brought before the Grand Jury constituted a contempt in the presence of the Court. I do not believe that the procedure may be short-circuited in this way: the intention to commit an offense is not the same as committing the offense.

Moreover, Marcus was a 42(b) proceeding, and I am of the view that the appellant here, in all the circumstances, was entitled to notice, an opportunity to prepare his defense and to defend himself, including an offer to the Court of such explanation as he may have for his refusal to answer if he be required to answer. These protections are afforded by Rule 42(b). Certainly, the problems raised were not so factually and legally clear as to justifiably premise the fourteen-minute [5] determination of guilt made under 42(a). Cf. Panico v. United States, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed. 2d 1.

For the reasons stated I am of the opinion that the petition for rehearing should be granted and accordingly dissent from its denial.

BIGGS, Chief Judge (dissenting).

I too must respectfully dissent for the following reasons. Assuming *arguendo* that Testa was guilty of contempt when he refused to answer the questions put to him in the court below, the order committing him until he has purged himself of his contempt may have become unenforceable by reason of his indictment. If he purges himself by answering the questions put to him he could, possibly, under the compulsion of the continuing contempt sanction, be compelled to testify against himself. This question was not adjudicated in Marcus v. United States, 310 F.2d 143 (3 Cir. 1962), and as Judge Kalodner points out in his dissent here, was not regarded as an issue in the opinion of the Supreme Court in

Piemonte v. United States, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961), because the indictment there had been quashed prior to argument of the appeal.

The issue seems to me to be of such importance as to warrant rehearing. I therefore join in Judge Kalodner's request for a rehearing, which I assume, is to be one en banc.

---

5. According to the transcript of the record, the proceeding resulting in the judgment appealed from commenced at 1:59 o'clock p. m. and concluded at 2:13 o'clock p. m. the same day.