UNITED STATES of America, Appellee,

v.

Al HARRIS, Appellant.

No. 394, Docket 28524.

United States Court of Appeals Second Circuit.

Argued April 7, 1964.

Decided July 22, 1964.

Neal J. Hurwitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York and John E. Sprizzo, Asst. U. S. Atty., New York City, on the brief), for appellee.

Moses Polakoff, New York City (Daniel H. Greenberg, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

Al Harris appeals from a judgment of conviction for contempt of court entered in the United States District Court for the Southern District of New York arising out of his refusal to answer certain questions put to him before a grand jury in the Southern District on the ground that he might thereby incriminate himself. We agree with the district court that inasmuch as Harris received immunity for his testimony pursuant to the provisions of the Federal Communications Act, his refusal to answer constituted contempt of court.

Harris was summoned to appear before the grand jury by a subpoena returnable on August 7, 1963.[1] The subpoena stated that the grand jury was investigating alleged violations of the Federal Communications Act, 47 U.S.C. §§ 203, 501. On that date, Harris appeared and stated his name but declined to answer any of

---

1. Harris first appeared before the grand jury on July 31, 1963, pursuant to a subpoena which stated that the grand jury was investigating possible violations of the general conspiracy statute, 18 U.S.C. § 371. Harris refused to answer the questions propounded to him, although the government's counsel advised him that the Federal Communications Act, 47 U.S.C. § 409(*l*), afforded him immunity. Later that day the grand jury and the government's counsel appeared before Judge McLean, who, after a read-ing of the record of the grand jury's proceedings, directed that Harris appear again the following morning. At that time Judge McLean heard argument on whether § 409(*l*) afforded Harris immunity. At Judge McLean's suggestion that the government lay a proper foundation for the grant of immunity, the subpoena here in question was issued stating that the grand jury was investigating possible violations of the Federal Communications Act.

the other questions propounded to him, which concerned a telephone call from Florida to New York City for the purpose of promoting an illegal dice game in Florida. Later that morning, the grand jury and the government's counsel appeared before Judge McLean in the presence of Harris and his attorney. After hearing argument, Judge McLean directed the parties to appear before him again the following morning. At that time, he directed Harris to answer the questions put to him, on the ground that he had received immunity under the provisions of the Communications Act, 47 U.S.C. § 409(*l*), and therefore could not incriminate himself by answering. When Harris once again refused to answer, the grand jury and the government's counsel again appeared before Judge McLean to ask his assistance. Judge McLean directed Harris to take the witness stand, propounded the same questions to him once more, and, when Harris again refused to answer, adjudged Harris in criminal contempt and sentenced him to one year's imprisonment. From this judgment and sentence Harris appeals.

Harris relies principally on the claim that the grand jury was in fact investigating alleged violations of the Anti-Racketeering Act, 18 U.S.C. § 1952, rather than alleged violations of the Communications Act. Inasmuch as the anti-racketeering statute makes no provision for the grant of immunity to a prospective witness, as does the Communications Act, Harris maintains that no immunity attached to him, and he could therefore not constitutionally be compelled to testify under penalty of contempt of court. We do not agree.

 In its investigation of possible violations of the Federal Communications Act, the grand jury may well unearth evidence of violations of other criminal provisions as well. But the likelihood of such a development provides no support for Harris' position. If the statutory provision under which the grand jury is proceeding extends immunity to the prospective witness, that immunity extends to all testimony thus compelled insofar as that testimony bears a substantial relation to the subject matter of the immunity provision. See Heike v. United States, 227 U.S. 131, 142–143, 33 S.Ct. 226, 57 L.Ed. 450 (1913). Moreover, the witness compelled to testify in a federal grand jury enjoys immunity as well from the use of that testimony by the prosecutorial agencies of state governments. Murphy v. Waterfront Commission of New York Harbor, 84 S.Ct. 1594 (1964). Thus the fact that his testimony may be relevant not only to the specific provision upon which the grand jury's investigation is based but as well to other criminal provisions poses no dilemma for the prospective witness. The crucial question, therefore, is whether the specific immunity provision of the Communications Act was applicable to Harris' questioning.

 Section 409(*l*) of Title 47 of the United States Code extends immunity for testimony given "in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of [the Federal Communications Act]." Harris contends that he should have been granted the right to summon several witnesses, including one or two members of the grand jury, to establish that the grand jury's investigation did not pertain to alleged violations of the Communications Act. We do not agree. The extent in general to which a witness may inquire into the subject matter of a grand jury investigation is severely circumscribed, in light of the secrecy in which grand jury proceedings have traditionally been held. United States v. Levine, 267 F.2d 335, 336–337 (2 Cir. 1959). See Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919). In any event, we find that the government sufficiently established that the grand jury's investigation fell within the confines of § 409(*l*).

First, the August 7 subpoena explicitly stated that the grand jury was engaged in investigation of possible violations of provisions of the Communications Act. Second, the government's counsel repre-

sented to the court that the grand jury was investigating possible violations of the Communications Act. Finally, the questions themselves revealed a substantial link with those sections of the Communications Act which prohibit any person from causing a telephone company to violate any provision of the Act. Cf. In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631, 637 (1962).

Harris maintains that under no circumstances could the activities inquired into in the grand jury have constituted a violation of the Communications Act. Rather, he suggests, these activities could at best have constituted violations of the general anti-racketeering statute, 18 U.S.C. § 1952. In support of its own position the government weaves the following argument: The Federal Communications Act makes unlawful the act of any person causing a telephone company to extend telephone services not provided for in its tariffs, 47 U.S.C. §§ 203, 501. The tariff of the American Telephone & Telegraph Company, joined in by the Southern Bell Telephone & Telegraph Company, states that telephone service shall "not be used for an unlawful purpose." Thus, the government contends, when an individual uses telephone facilities for an unlawful purpose he causes the telephone company to extend to him services not provided for in its tariffs and consequently to violate the Communications Act.

On facts quite analogous to those here presented, the Third Circuit held that the government had sufficiently established the necessary link of a possible violation of the Communications Act, on the theory which the government here proffers. Marcus v. United States, 310 F.2d 143 (3 Cir. 1962), cert. denied, 372 U.S. 944, 83 S.Ct. 933, 9 L.Ed.2d 969 (1963). See also United States v. Testa, 326 F.2d 730 (3 Cir.), cert. denied, 376 U.S. 931, 84 S.Ct. 701, 11 L.Ed.2d 652 (1964). Moreover, the government refers us to indictments which have been returned in other districts charging violations of the Communications Act under similar circumstances. Finally, we must

recognize that the scope of the grand jury's investigation is not limited to the specific questions put to Harris. Indeed, further questioning might conceivably reveal the use of telephone facilities on a large scale in the promotion of unlawful enterprises, and corruption in connection therewith, which would certainly constitute a violation of the Communications Act, at least to the extent of any participation by telephone company representatives. On balance, we hold, as did the Third Circuit, that the government has established that the grand jury investigation here is a proceeding "based upon or growing out of [an] alleged violation of [the Federal Communications Act]."

We also find no merit in Harris' claim of procedural irregularities in the adjudication of his contempt and in his sentencing. Contrary to his charges, the record establishes that the contempt proceeding was conducted in open court. Moreover, Judge McLean did not err in treating Harris' refusal to answer the questions after court direction to do so as a summary contempt under Rule 42(a) of the Federal Rules of Criminal Procedure. Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960). Accordingly, we affirm the judgment of conviction of the district court.

We note that some members of the United States Supreme Court indicated their view, in a footnote to United States v. Barnett, 376 U.S. 681, 695 n. 12, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), that punishment of a criminal contempt by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses. Inasmuch as the Court explicitly regarded this statement as *dictum*, and inasmuch as Harris' contempt was committed in the presence of the court and the contempt proceeding was undertaken prior to compliance with the court's order, in both of which respects this case differs from Barnett, we uphold the power of the district judge to impose a sentence of one year's imprisonment, although such a sentence is in

excess of that provided for petty offenses. 18 U.S.C. § 1. See Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960); Brown v. United States, 359 U.S. 41, 79 S.Ct. 539 (1959).

The judgment of the district court is affirmed.