**UNITED STATES of America,
Appellee,**

v.

**Andimo PAPPADIO, Defendant-
Appellant.**

**No. 248, Docket 29298.**

United States Court of Appeals
Second Circuit.

Argued Nov. 18, 1964.

Decided May 24, 1965.

**6**

Medina, Circuit Judge, dissented in part.

John E. Sprizzo, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, and John S. Martin, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Maurice Edelbaum, New York City (Philip R. Edelbaum and Lauritano, Schlacter & Schneider, New York City, and Jacob Kossman, Philadelphia, Pa., on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge.

Andimo Pappadio appeals from a conviction for contempt for refusing to answer five of the questions put to him by a federal grand jury sitting in the Southern District of New York. We find the conviction and sentence to be proper,

and we affirm the judgment of the district court.

As part of the grand jury's inquiry into alleged violations of the federal narcotics laws, it had Pappadio summoned before it. On February 14, 1964 and again on April 24 and May 8, he was asked numerous questions, but he gave only his name and some other biographical information; he refused to answer the other questions on the ground that his answers would tend to incriminate him.

On the government's application, Judge MacMahon on August 4, 1964 issued an order under 18 U.S.C. § 1406,[1] which directed Pappadio to testify and granted him immunity from prosecution with respect to such testimony. However, Pappadio again refused to testify when he appeared before the grand jury later that day and on October 6. (At these and earlier appearances he sometimes cited the First Amendment as well as the Fifth.)

On October 8, Judge Herlands specifically ordered Pappadio to answer the grand jury's questions, and Pappadio did answer some questions the following day. But he refused to give any information concerning his meetings with Tommy Lucchese and, it appears, one or more lawyers. He based his refusal principally on the attorney-client privilege but also on the First, Fifth and Sixth Amendments.

After a hearing before Judge Herlands, who found his claim of privilege to be without merit, Pappadio answered questions as to the duration and time of day of the meetings. However, he still refused to answer five of the questions, and these are the questions at issue on this appeal:

"Mr. Pappadio, who are the attorneys who were present at these meetings?"

"Aside from the meetings which you described, which took place in the street, where else did you meet with Lucchese?"

"Who else was present at these meetings besides yourself, Lucchese and the attorneys?"

"All right. How many of such meetings were there?"

"Where did the meetings take place?"

A hearing pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure

1. "§ 1406. Immunity of witnesses

"Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of—

"(1) any provision of part I or part II of subchapter A of chapter 39 of the Internal Revenue Code of 1954 the penalty for which is provided in subsection (a) or (b) of section 7237 of such Code,

"(2) subsection (c), (h), or (i) of section 2 the Narcotic Drugs Import and Export Act, as amended (21 U.S.C., sec. 174), or

"(3) the Act of July 11, 1941, as amended (21 U.S.C., sec. 184a), is necessary to the public interest, he upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecution described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

was held on October 28 and 30. Judge Herlands found Pappadio guilty of contempt and sentenced him to imprisonment for two years or "until further order of the Court" if Pappadio answered the questions before his sentence expired or the grand jury was discharged, whichever first occurred.

Pappadio's principal challenge to his conviction is that he was privileged not to answer the questions, despite the grant of immunity under § 1406. Three grounds are put forward for the claimed privilege. The first is that he is under indictment for alleged violation of the federal narcotics laws. The likelihood that Pappadio will now be prosecuted under this indictment, which was filed in 1958, appears not to be great; seventeen of the thirty-seven defendants named in the indictment were tried and convicted in 1959, see United States v. Aviles, 274 F.2d 179 (2 Cir.), cert. denied, Evola v. United States, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960), but we are informed that Pappadio's name has not even appeared on the trial calendar since 1958. Moreover, the meetings as to which Pappadio was questioned took place in 1963 or later,[2] over six years after the most recent act alleged in the 1958 indictment.

■ In any event, Pappadio suggests no way in which the pendency of the 1958 indictment renders the immunity granted under § 1406 insufficient to protect him from being incriminated by his answers. Pappadio does point out, correctly, that the immunity does not bar the government from prosecuting him under the indictment or for perjury in the testimony he may give before the grand jury. The danger of such prose-cutions is something different than the danger of self-incrimination, however, and the protection of § 1406—like that of the constitutional privilege which it replaces—is directed only at the latter. Section 1406 does effectively protect the witness from being prejudiced in any criminal proceeding as a result of his answers; it creates a defense to prosecution for acts as to which he is compelled to testify, and it bars the use of such testimony against him in a prosecution for any other acts.[3]

■ If Pappadio is required to give any testimony relating to the matters charged in the 1958 indictment, in response either to the questions now at issue or to subsequent questions, he could then move to have the indictment dismissed as to himself. And even if his answers are not such as to entitle him to dismissal of the indictment, he is protected against the answers being used against him in any criminal proceeding, including one under the pending indictment.

■ It appears to be Pappadio's position, however, that protection against self-incrimination is insufficient in this case because the privilege not to testify before a grand jury while under indictment is part of the privilege of a criminal defendant not to testify at trial, a privilege which goes beyond the privilege against self-incrimination. See Piemonte v. United States, 367 U.S. 556, 565, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961) (Douglas, J., dissenting). The legitimate interests of a witness before a grand jury, even a witness under indictment, would seem to be sufficiently protected by the privilege against self-incrimination. And, apart from the Pie-

2. Pappadio was questioned as to meetings which occurred subsequent to commencement of proceedings before the grand jury, which was impaneled in September 1963.

3. By its express terms, § 1406 does not protect a witness from prosecution for perjury committed while testifying under that section's compulsion. Such a limita-tion has been held not to make a statutory grant of immunity an inadequate substitute for the Fifth Amendment privilege. Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911). The theory of Glickstein is that the Fifth Amendment protects only against self-incrimination with respect to past acts, not with respect to the testimony being given.

monte dissent, we find no authority for also extending to such a witness the privilege not to testify at all, even where given immunity.

The second and third grounds offered for the claim of privilege are that the requested facts are protected by the attorney-client privilege and that the questions interfere with the right to effective representation by counsel guaranteed by the Sixth Amendment. The factual premise for both grounds is Pappadio's allegation that the meetings were with counsel and witnesses in connection with the 1958 indictment and a possible prosecution for perjury.

■ Since the policies served by the attorney-client privilege go beyond protection against self-incrimination, the privilege is not destroyed by a grant of immunity from prosecution. See Note, 72 Yale L.J. 1568, 1578 (1963). Pappadio's reliance on the privilege in this case is misplaced, however. On the present record we cannot determine whether the privilege could properly be asserted even with respect to the subject matter of the meetings. In any event, the grand jury has not inquired into the subject matter of the meetings, and the questions which it has asked—who was present; where did the meetings take place; who arranged them—have not touched on matters meriting the protection of the privilege. See Colton v. United States, 306 F.2d 633 (2 Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). For the same reason, the questions have in no way interfered with Pappadio's right to effective representation by counsel. Compare Coplon v. United States, 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

■ Pappadio also objects to his sentence. He contends that the penalty imposed for criminal contempt after only a summary trial is constitutionally limited to that provided for petty offenses. See United States v. Barnett, 376 U.S. 681, 695 n. 12, 84 S.Ct. 984, 12 L.Ed.2d

23 (1964). Read literally, the Barnett dictum does indeed stand for such a rule, and it appears to have been so interpreted by a majority of a panel of the Court of Appeals for the District of Columbia. See Rollerson v. United States, D.C.Cir., 343 F.2d 269, October 1, 1964 (2–1 decision). However, we adhere to our prior decisions, which have interpreted the Barnett dictum as not applying where the contempt is committed in the presence of the court and it remains possible for the defendant to comply with the court's order at the time that the contempt proceedings are begun. See United States v. Shillitani, 2 Cir., 345 F.2d 290, May 18, 1965; United States v. Tramunti, 2 Cir., 343 F.2d 548, April 5, 1965; United States v. Castaldi, 2 Cir., 338 F.2d 883, 885, petition for cert. filed, 33 U.S.L. Week 3223 (Dec. 17, 1964); United States v. Harris, 2 Cir., 334 F.2d 460, 463, cert. granted, 379 U.S. 944, 85 S.Ct. 438, 13 L.Ed.2d 542 (1964).

We have considered Pappadio's contention that the questions were not shown to be relevant to the grand jury's inquiry, and we find it to be without merit.

The judgment of the district court is affirmed.

MEDINA, Circuit Judge (concurring and in part dissenting).

I agree with my brothers of the majority on all points except the sentence to a period of two years imprisonment. This, in my opinion, is too much. We have held that this Court has power to reduce the period of imprisonment meted out for a contempt of court, see United States v. Levine, 2 Cir. 1961, 288 F.2d 272, applying the unambiguous mandate of Brown v. United States, 1959, 359 U.S. 41, 52, 79 S.Ct. 539, 3 L.Ed.2d 609, and I would reduce appellant's sentence to one year instead of two. I realize that this Court has upheld sentences of two years in similar cases, but I wish to register my dissent.