In Re: Donald MacDonald.

Argued May 8, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Carroll Caruthers,* and with him *S. W. Bierer,* for appellant, cited: Commonwealth ex rel. v. Perkins, 124 Pa. 36; Commonwealth v. Heenerfauth, 70 Pa. Superior Ct. 527.

*Charles C. Crowell,* and with him *Howard H. Whitehead* and *Daniel V. Crowell,* for appellee, cited: Wil-

liamson's Case, 26 Pa. 9; Seidman's Estate, 270 Pa. 467.

OPINION BY STADTFELD, J., October 2, 1933:

On April 4, 1933, McCANN, President Judge of the 47th Judicial District, specially presiding in the court of common pleas of Westmoreland County, Pennsylvania, entered an order wherein it was stated that Donald MacDonald had on that day in the presence of the court said to an officer of the court, "Pray for me, I'm going to get that crowd yet," at the same time nodding his head towards the bench where the court was in session en banc; that this statement constitutes contempt of the court, and ordered that the prothonotary immediately issue an attachment directed to the sheriff of Westmoreland County to attach the said Donald MacDonald and have his body before said court to answer for contempt of court. The attachment was issued as directed and placed in the hands of the sheriff, who, according to his return, took MacDonald into custody and produced him in open court on the morning of April 5, 1933.

On that day the court comprised of McCANN, COPELAND, WHITTEN and DOM, JJ., sat to hear and determine the alleged contempt. No petition or affidavit was filed in support of the order for the attachment. The respondent objected to being tried by the court as then constituted, and requested leave to file affidavit in support of his belief, that two of the members of the court, namely, McCANN and COPELAND, JJ., were biased and prejudiced against him. This motion was overruled and the hearing proceeded with immediately.

Carrie S. Gilchrist, a tipstaff in the court of WHITTEN, J., called to substantiate the charge, testified that she was sitting in the rear of the court room about forty feet from the bench; that a motion for a new trial in the case of Donald MacDonald, the respondent,

v. Paul McCormick and Victor Bouton, had just been argued before McCann, Copeland and Whitten, JJ., who constituted the court en banc holding argument court on that day; that MacDonald as he passed out of the court room leaned over and said to her, "Pray for me; I will get that crowd yet," at the same time nodding towards the bench. The remark apparently caused no disorder or disturbance of any kind. Sometime after the adjournment of court, the witness notified C. S. Clark, who is court crier in Judge Whitten's court, of what took place. The witness was then taken before the three judges at chambers. The order for the attachment was made later.

The court admitted in evidence, over objection, a number of letters written and distributed by MacDonald in large numbers to lawyers and judges, covering a considerable period of time prior to the date of the hearing. MacDonald took the stand and denied that he had make the remark as stated, but admitted that he had said to Carrie S. Gilchrist, "Pray for me; I'll beat that crowd yet;" denied that he nodded towards the bench; stated that he had no ill will and bore no grievance against any of the judges.

A request was then made to the court to permit the respondent an opportunity to summon witnesses, who knew him and would testify that his reputation for peace and good order, and as a law abiding citizen in the community, in which he lived, was good. This motion was denied, the court assuming, for the purposes of the case, that he is a law abiding citizen and that his reputation is all right. The decree finding him guilty of contempt of court and sentencing him to one year in jail, was entered at the conclusion of the hearing. The same day J. M. Keating, the warden of the Westmoreland County jail, presented a petition under Section 304 of the Mental Health Act, Act of July 11, 1923, P. L. 998; Purd. Penn. Stats. Ann. Title 50, Sec-

tion 44, page 11. A commission was appointed to determine whether MacDonald was mentally ill. The commission filed its report on April 7, 1933. The court committed Donald MacDonald to the Torrance State Hospital. All of the proceedings were entitled in the court of common pleas as of No. 446 May Term, 1933. This appeal followed.

"Where the contempt arises from some misconduct in the presence of the court, or refusal to obey its lawful process, order or decree, the appellate court will not inquire further than to ascertain whether the record shows such misconduct or disobedience of the court's order, and the judgment on the facts is generally conclusive." KELLER, J., in In re Adjudication of Contempt of Myers and Brei, 83 Pa. Superior Ct. 383.

Likewise, as stated by KEPHART, J., in Sperry and Hutchinson Co. v. McKelvey Hughes Co., 64 Pa. Superior Ct. 57, 60: "This is an appeal from an order of the court in an attachment for contempt. The proceeding before us is in the nature of a certiorari and as such must be governed by the rules controlling such appeals. The only question which can properly be raised is whether the court below exceeded its jurisdiction in holding the petitioner for a contempt and in imposing on him a fine therefor. We do not revise (review) the case upon its merits. Every fact found by the court below is taken to be true and every intendment is to be made in favor of their record if it appears that they proceeded within their jurisdiction. We are not at liberty, therefore, to consider the testimony or inquire whether the facts as they appear upon the hearing justify the action of the court below." We must therefore assume the correctness of the finding that respondent used the language mentioned, viz: "Pray for me, I will get that crowd yet."

As stated by BLACK, J., in Williamson's Case, 26 Pa. 9, 18, in speaking of the power in the courts, in

proceedings for contempt: "All courts have this power, and must necessarily have it, otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless. The authority to deal with an offender of this class, belongs exclusively to the court in which the offense is committed; and no other court, not even the highest, can interfere with its exercise." To same effect, Com. v. Shecter, 250 Pa. 282; Scranton City v. Peoples' Coal Co., 274 Pa. 63.

In the language of Chief Justice PAXSON, in Com. ex rel. v. Perkins, 124 Pa. 36, 48: "A court that has not the power to protect itself from public insult, or to compel obedience to its lawful process, would be beneath contempt."

As stated by ORLADY, J., in Greason v. Cumberland Ry. Co., 54 Pa. Superior Ct. 595, 600: "There may be misbehavior in the presence of the court amounting to contempt that would not ordinarily be said to obstruct the administration of justice, and so, there may be misbehavior not in the immediate presence of the court, but outside the building in which the court is held, which on account of its disorderly conduct would actually interrupt the court, being in session in the conduct of its business, and consequently obstruct the administration of justice."

The controlling question in this case is, did the words used by appellant amount to contempt?

Webster defines "to get," as used in its vulgar sense, "To get square with, to become on even terms with, to repay for a benefit or an injury; ...... to get the better of, to obtain an advantage over, whether fairly or unfairly."

The effect of the language used by appellant to Miss Gilchrist, the tipstaff, the person whom he addressed, was to cause worry and fear, and because of her apprehension she reported the matter to the court crier.

Appellant assigns as error the overruling of (1) the objection that upon no charge other than that an attachment writ had been served on the respondent, and (2) the overruling objection to two members of the court, Judges McCann and Copeland, because of alleged bias against the respondent. Considering the nature of the language, and the time and place where used, it was not an indispensable prerequisite to grant a rule to show cause before issuing the attachment.

Under the authorities quoted supra, "that every court of competent jurisdiction is the exclusive judge of contempts against itself, ......" subject to review by the appellate court as hereinbefore stated, we can not say that the objection of alleged bias was such as to disqualify the two judges named, particularly in view of the fact that two other judges sat with them and against whom no objection was urged. If alleged bias were to disqualify in every case where this objection were raised, it would practically make impossible in many cases the punishment for contempt. It might have been better judgment, in the instant case, as two other judges were sitting, for the two judges, against whom the objection was urged, to have retired, as it would not have occasioned any delay or injured any public or private right. As all of the four judges concurred in the findings and order, we cannot say that respondent, appellant, was prejudiced or injured in any manner by the sitting of two judges against whom the objection of bias was urged.

The Snyder case, 301 Pa. 276, and Dunmore Borough Election, 299 Pa. 517, upon which appellant relies, are readily distinguishable from the instant case in that the judges in those cases had a personal interest in the matters at issue. This assignment of error must therefore be overruled.

Appellant assigns as errors, the admission, over objection, of certain letters, Exhibits 1 to 13, both in-

clusive, which had been sent by respondent, appellant, at different times to lawyers and judges, prior to the commission of the alleged contempt. The letters contain serious charges against one of the judges against whom he objected to sitting and which, if true, would subject the judge to impeachment. The admission of these letters was not for the purpose of sustaining the charge of contempt by reason of what is contained therein; they were not competent for that purpose, but they were competent for the purpose of showing the animus of respondent, appellant, and to aid in interpreting and applying what he meant when he said "Pray for me, I will get that crowd yet." Appellant was not charged with contempt because of the letters. He was found guilty of contempt for his threatening language uttered and made in open court. It must be conceded that these letters indicated that appellant had a very pronounced ill feeling against Judge COPE-LAND. The assignments of error relating to the admission of these letters are overruled.

Appellant assigns as error the cross-examination of respondent on matters not brought out on direct examination. The respondent, appellant, was a witness on his own behalf, and he was asked on direct examination by his counsel, "Q. Do you have any ill will against either Judges WHITTEN, COPELAND or McCANN, for which you desire to do them any personal injury or harm? A. No, sir, I did not." The letters were competent to contradict his own testimony. There was no objection that these letters would tend to incriminate him when asked to identify them; besides Exhibits 1 to 11, both inclusive, had already been identified by other witnesses.

As stated in Henry on Trial Evidence, 2nd Ed., page 537: "A greater latitude is allowed in the cross-examination of a defendant in a criminal case than in cross-examination of an ordinary witness. When he

denies having committed the crime charged, everything which tends to contradict his statement is a proper subject of cross-examination." And in Com. v. Racco, 225 Pa. 113, 117, Mr. Justice Brown, quoting from Underhill on Criminal Evidence, Secs. 60 and 61, says: "In other words, the rule then is that he cannot claim as a witness the privileges which belong to him solely as the accused. He cannot complain if considerable latitude is allowed on his cross-examination, and, generally, he may be asked on his cross-examination the same questions as any witness. In states where the cross-examination of the accused is not by statute expressly limited to matters brought out on his direct examination, he may be cross-examined, not only upon matters strictly relevant to the issue, but upon those which are collateral and apparently irrelevant, and which are calculated only to test the credibility and weight of his testimony . . . . . . He may be questioned as to specific facts calculated to discredit him." This assignment of error is overruled.

Appellant assigns as error the refusal of the court below to permit respondent to bring in witnesses to testify as to his good character. The court in answer to the offer stated "It is assumed, for the purposes of this case that he is a law abiding citizen and that his reputation is all right. . . . . . . Witnesses upon any other subject than the contempt are immaterial. Contempt committed in the presence of the court could be tried summarily the moment it was committed." This case was not being tried before a jury, and we do not believe that respondent was in any manner injured or deprived of any right by the ruling of the court. The assignment of error is overruled.

Appellant contends that the remark of the respondent was not such a contempt as the court could summarily punish. We have already discussed this supra. We believe that the conduct of respondent comes spe-

cifically under classification III of Section 23 of the Act of June 16, 1836, P. L. 784; Purdon Penna. Stats. Ann. Titl. 17, Section 2041, page 503, providing, inter alia, for summary punishment of contempts of court, to wit: "III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." The assignments of error in relation thereto are overruled.

Appellant assigns as error the sentence of the court, "That he (respondent) be confined in the county prison for the period of one year or until the further order of the court," claiming that the sentence is for an indefinite period and not warranted by law. We can not agree with this contention. The direction for confinement for the period of one year is for a definite period. The rest of the language may be considered as surplusage.

Appellant assigns as error the commitment of respondent under the Mental Health Act, Section 304 of the Act of July 11, 1923, P. L. 998, Purdon Penna. Stats. Ann. Tit. 50, Section 44, page 11, by an order of the court made April 7, 1933. The order of commitment for contempt was made April 5, 1933. A petition was subsequently presented to court on the same day by the prison warden, alleging that the respondent was mentally ill and that care in a mental hospital is necessary for his benefit. Thereupon the court on the same day appointed a commission to examine him. The commission made its examination, after notice, and filed its report finding respondent mentally ill and a proper subject for admission to a hospital for mental diseases. On April 7, 1933, the court approved the report and directed that the respondent be committed to the Torrance State Hospital, Westmoreland County, to be detained and treated as a mental patient until he shall have recovered or shall have been removed according to law. To this order no exception was taken,

no bill sealed and no appeal taken. These proceedings were entitled as of the same number and term as the contempt proceedings. This, however, does not make them part of the latter. The proceedings under the Mental Health Act were subsequent to the order of commitment for contempt and can not be considered in connection therewith.

If the mental condition of the respondent was such at the time of the commission of the contempt as to relieve him of responsibility, we have no doubt that upon the presentation of a proper petition establishing this condition, such order will be made as the court may deem proper under the circumstances. As to the commitment under the Mental Health Act, the latter provides the manner and the conditions under which he may be discharged.

The order of commitment for contempt is affirmed.