Riccobene Appeal.

406

Argued May 4, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Ronald N. Rutenberg,* with him *Harry A. Rutenberg, Michael J. Rutenberg,* and *Rutenberg, Rutenberg, Rutenberg & Rutenberg,* for appellant.

*Arlen Specter,* District Attorney, with him *Esther R. Sylvester, John Rogers Carroll,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, and *Richard A. Sprague,* First Assistant District Attorney, for appellee.

*Edward Friedman,* Counsel General, with him *David W. Rutstein,* Deputy Attorney General, and *William C. Sennett,* Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, July 13, 1970:

Appellant, Mario Riccobene, was sworn as a witness by Judge SLOANE to testify before the Investigating Grand Jury in the City of Philadelphia on October 27, 1969. The Grand Jury had begun sitting on April 8, 1969, for the purpose of investigating organized crime and alleged corruption in the governmental departments and agencies of the City of Philadelphia.

On November 20, 1969, appellant was questioned before the Grand Jury on matters relating to organized crime and the bribery of a City official. The questions concerned the involvement of certain City officials and persons allegedly connected with organized crime in real estate and urban redevelopment transactions. One of the questions related to an alleged bribery of a member of Philadelphia's City Council for a favor in connection with a land transaction in a redevelopment area.

Appellant refused to answer the questions asked by the Grand Jury, asserting his Constitutional privilege against self-incrimination granted by the Fifth Amendment. Later the same day, appellant reiterated his refusal before Judge SLOANE in open court. Judge SLOANE then affirmed appellant's right to assert his privilege and to refuse to answer the questions.

On January 30, 1970, the Attorney General of the Commonwealth of Pennsylvania and the District Attorney of Philadelphia filed a Petition for the grant of immunity under the Act of November 22, 1968, P. L.    , 19 P.S. §640.1-6, together with a rule returnable on February 5, 1970 to show cause why appellant should not be compelled to testify under a Grant of Immunity.

On February 5, a hearing was held, at which time the particular need for appellant's testimony in the pending Grand Jury Investigation was elucidated. The Commonwealth presented evidence of the matter under immediate inquiry by the Grand Jury to show the need for appellant's testimony. On February 19 and 20, 1970, the Court below heard extensive argument by counsel for appellant in opposition to the Commonwealth's Petition for the Grant of Immunity.

On February 26, 1970, the Court below decreed that appellant must testify before the Investigating Grand Jury with the immunity provided under Act No. 333 of 1968. An appeal was taken to the Superior Court from this Order. Supersedeas was denied and the appeal was quashed by that Court on the ground that the Order was interlocutory.

On March 6, 1970, appellant was asked the identical questions before the Grand Jury. Despite the grant of immunity he persisted in his refusal to answer.

The lower Court then held a hearing to determine whether appellant should be held in contempt of Court. The Commonwealth produced evidence of his refusal to answer questions asked by the Grand Jury. The Court then offered the appellant a chance to purge himself of any contempt by answering the questions. He refused to answer, asserting again that he had a Constitutional right to do so. The lower Court then ordered "that the respondent Mario Riccobene a/k/a Sonny Riccobene be forthwith committed to the County Prison and remain so committed for a period of six (6) months unless he shall sooner purge himself by testifying before the said Grand Jury, whereupon he shall be released." From this Order, Riccobene has taken this appeal. This Order was undoubtedly a penalty or sentence of civil contempt.*

---

* See infra.

On this appeal, Riccobene makes the same three basic contentions which he made before the Court below. He first asserts that the Immunity Statute is Unconstitutional and that he was thus still privileged to refuse to answer, because of his Constitutional privilege against self-incrimination (see infra). His second contention is that the petition for the grant of immunity was insufficient and inadequate and that immunity was improperly granted. Finally, he asserts that the lower Court improperly cited him for civil contempt when the only punishment provided by the Immunity Statute for a failure to answer is criminal contempt. We find no merit in *any* of these contentions.

## I. CONSTITUTIONALITY

Riccobene asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and under the Pennsylvania Constitution. As this Court said in *Commonwealth v. Carrera*, 424 Pa. 551, 227 A. 2d 627 (pages 552-553) : "The privilege afforded against compulsory self-incrimination by the Fifth Amendment to the United States Constitution is now protected under the Fourteenth Amendment against abridgment by the states: Malloy v. Hogan, 378 U.S. 1 (1964). Accord, Murphy v. Waterfront Commission of New York, 378 U.S. 52 (1964) ; Tehan v. U.S. ex rel. Shott, 382 U.S. 406 (1966) ; and, Commonwealth v. Negri, 419 Pa. 117, 213 A. 2d 670 (1965)." In *Gardner v. Broderick*, 392 U.S. 273 (1968), the Court said (page 276) : "Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying."

## A. Scope of Pennsylvania Immunity Grant

Riccobene contends that the Pennsylvania Statute is unconstitutional because it fails to provide immunity against the use of the *fruits* of the compelled testimony in connection with a criminal prosecution. The statute, in pertinent part, provides: "§640.3. Immunity. *No such witness shall be prosecuted or subjected to any penalty or forfeiture nor shall there be any liability on the part of and no cause of action of any nature\** shall arise against any such witness *for or on account of any transaction, matter or thing* concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, *nor shall testimony so compelled be used as evidence in any criminal proceeding against him in any court.* 1968, November 22, P. L.    , No. 333, §3."

This is not the first time language such as this has been subjected to Judicial scrutiny. It is almost identical to language considered by the Supreme Court of the United States in *Brown v. Walker,* 161 U.S. 591 (1896). The Federal statute there construed provided: "But no person shall be prosecuted or subjected to any penalty or forfeiture *for or on account of any transaction, matter or thing,* concerning which he may testify, or produce evidence, documentary or otherwise, before said Commission, or in obedience to its subpoena, or the subpoena of either of them, or in any such case or proceeding." Act of February 11, 1893, ch. 83, 27 Stat. 443.

In *Brown v. Walker,* the Court held that the statute granted what has come to be called "transactional" immunity, which precludes prosecution for any transaction concerning which testimony was compelled,

---

\* Italics throughout, ours, unless otherwise noted.

regardless of its source. This is *broader than* the so-called "use" immunity statute, which forbids further use of compelled testimony or its fruits, but would still permit prosecution for the same transaction if the evidence was obtained independently of the compelled testimony.

*Brown v. Walker* was reaffirmed recently in *Ullmann v. United States,* 350 U.S. 422 (1956), where the identical language (hereinabove quoted) was once again found Constitutional. By its terms, the Pennsylvania Immunity Act is clearly a grant of "transactional" immunity identical to—and indeed broader than—that upheld in *Brown* and *Ullmann,* supra. As such it is, we repeat, broader than the "use" immunity, viz., the scope of protection required under the United States Constitution as interpreted in *Murphy v. Waterfront Commission,* 378 U.S. 52; *Gardner v. Broderick,* 392 U.S., supra. See note: Scope of Taint, 114 U. of Pa. Law Rev. 570 (1966).

Riccobene further contends that the statute protects him only from prosecution for offenses being investigated by the Grand Jury, and that as the Grand Jury is investigating only certain organized criminal acts, he is not protected from prosecution for other crimes which his testimony might reveal. The immunity relates to the *transactions, matters or things* concerning which testimony is compelled, not merely to the specific crimes which the Grand Jury was called to investigate. The immunity is as extensive as the testimony given, *Marcus v. United States,* 310 F. 2d 143 (3d Cir. 1962); by its terms it extends to *"any penalty or forfeiture* for or on account of *any transaction, matter or thing"* concerning which he is compelled to testify. Thus the coverage of the statute is broad enough to include *any offense or crimes* disclosed by the compelled testimony.

## B. Civil Liability

Appellant also contends that the statute is Constitutionally infirm because it fails to provide immunity for *civil* liability. It must first be noted that he cites *no* decision of this or of any other Court which *requires* such immunity. As the Supreme Court said in *Hale v. Henkel*, 201 U.S. 43, 67: "The interdiction of the Fifth Amendment operates only when a witness is asked to *incriminate* himself—in other words, to give testimony which may possibly expose him to a *criminal* charge."

Fear of public disgrace or personal danger or civil liability are not adequate Constitutional or legal grounds to successfully invoke the privilege and protection of immunity and only criminal prosecutions and *criminal* liability need be immunized. *Ullmann v. United States*, 350 U.S., supra; *Piemonte v. United States*, 367 U.S. 556.

The penalty imposed upon this appellant was for civil contempt. *Brocker v. Brocker*, 429 Pa. 513, 241 A. 2d 336; *Knaus v. Knaus*, 387 Pa. 370, 376, 127 A. 2d 669, 672. Pennsylvania's Immunity Act provides: ". . . nor shall there be any liability on the part of *and no cause of action of any nature shall arise against* any such witness *for or on account of any transaction, matter or thing. . . .*" Even though appellant is not Constitutionally entitled to immunity from civil liability, we believe that Pennsylvania's aforesaid Act clearly grants immunity from civil liability.

## C. Prosecution by Jurisdictions

Riccobene contends that the statute is unconstitutional because it does not provide immunity from prosecution in Federal or other State jurisdictions. Once again, we disagree. The statute grants *immunity* against self-incrimination, "nor shall testimony so com-

pelled be used as evidence in any criminal proceeding against him *in any Court.*" We believe this language is sufficiently broad to protect him in Federal and in all other State Courts.

The question of immunity from *Federal* prosecution was squarely presented to the United States Supreme Court in *Murphy v. Waterfront Commission,* 378 U.S., supra. In that case, witnesses before a bi-State investigating board were granted immunity by both States (New York and New Jersey) but asserted their privilege against self-incrimination on the grounds that they were still subject to Federal prosecution, because the State immunity grants were not binding on the Federal Courts.

The Court, in *Murphy v. Waterfront Commission,* held (pages 77-78-79) : "We hold that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law.

. . .

"Applying the holding of that case to our holdings today that the privilege against self-incrimination protects a state witness against federal prosecution, supra, at 77-78, and that 'the same standards must determine whether [a witness'] silence in either a federal or state proceeding is justified,' Malloy v. Hogan, ante, at 11, we hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime,

the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity."

In a footnote, the Court outlined the procedure to be followed, in effect granting *"use"* immunity from Federal prosecution to witnesses compelled to testify under State grants of immunity. Thus Riccobene has no claim that testimony compelled by Pennsylvania's immunity or its fruits could ever subject him to Federal prosecution.

In *Malloy v. Hogan,* 378 U.S. 1, the Court said (page 11) : "What is accorded is a privilege of refusing to incriminate one's self, and the feared prosecution may be by either federal or state authorities. Murphy v. Waterfront Comm'n, post, p. 52. It would be incongruous to have different standards determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified."

Appellant's second contention is that he may continue to assert his privilege because the immunity does not protect him from the use of his testimony in a criminal prosecution by another State. We have hereinabove quoted some pertinent language from the Supreme Court on this point.

A number of other Courts have faced this issue since *Murphy* was decided. They view *Murphy* as a Constitutional decision, which grants "use" immunity from prosecution in all other States as well as in the Fed-

eral Courts. This was the view taken by the Supreme Court of New Jersey in *Zicarelli v. New Jersey State Commission of Investigation*, 55 N.J. 249, 261 A. 2d 129 (1970), when it said (page 270) : "It is contended the statutory immunity is inadequate because it does not protect a witness with respect to a prosecution in a sister State or in a foreign land. As to a sister State, it seems clear that if the Fifth Amendment requires protection against the use of the testimony by a sister State, the Amendment itself will provide that protection. Murphy can mean no less. United States ex rel. Ciffo v. McClosky, supra, 273 F. Supp. at 606; Application of Longo, supra, 280 F. Supp. 185; cf. In re Flanagan, 121 U.S. App. D.C. 368, 350 F. 2d 746, 747 (1965). As to a foreign land, even if Murphy means that liability under foreign law is now relevant, the danger in the case before us is too imaginary and unsubstantial to sustain a refusal to answer. See Murphy, 378 U.S. at 67-68, 84 S. Ct. 1594, 12 L. Ed. 2d at 688."

We agree with this view of *Murphy*. Thus, as the immunity granted Riccobene covered both Pennsylvania and, through *Murphy* and cases, supra, Federal prosecution, as well as prosecution in other States, it was coextensive with his privilege against self-incrimination and therefore Constitutional.

### D. Vagueness

Riccobene's final Constitutional claim is that the Immunity Act is too vague and is thus Unconstitutional on its face. As we have already pointed out, the statute clearly grants full "transactional" (and use) immunity from criminal prosecution, as well as precluding the imposition of civil liability, ". . . and no cause of action of any nature shall arise . . . for or on account of any transaction . . ."

Under §6 of the Act, the definition of "organized crime" is clearly made out. The procedure for showing the "need" for a grant of immunity is sufficiently set forth in the Act. Only after the prosecuting official has decided that a particular witness's testimony is necessary is the petition for immunity presented to a Judge. The ultimate finding of need lies with the Court, and an opportunity is afforded a witness to a hearing and, if desired, a brief and an oral argument to support his contentions that there is no need in his particular case.

More basically, Riccobene's whole argument on this point hinges on an erroneous premise. He assumes that the immunity granted would apply only to those matters within the stated purpose of the Grand Jury investigation. This is not the case. We repeat, the immunity, by its terms *applies to "any transaction, matter or thing"* concerning which he is compelled to testify.

The relevance of particular questions is for the Grand Jury to decide. Once immunity is granted it extends to *any* matter which the witness is *compelled* to reveal. There is no need for precise limitations on the questioning itself—the immunity is as broad as the scope of the Grand Jury's questioning. See *Marcus v. United States*, 310 F. 2d 143, supra. The witness is not required to guess at the application of the statute; once the immunity is granted he simply answers all the questions and enjoys immunity from prosecution and liability for the criminal conduct revealed.

There is here no complicated scheme for conferring immunity such as that considered in *Stevens v. Marks*, 383 U.S. 234. There is here no requirement of any *limited* waiver of immunity as is necessary to maintain a public office. No attempt was made here to urge a waiver, no procedural steps were required of the witness. Full, complete and Constitutional immunity was

granted, and Riccobene had no choice but to answer. There is no merit in appellant's contention that the statute is void for vagueness.

## II. NEED FOR IMMUNITY

Riccobene also contends that under the statute no adequate showing was made of the *need* for immunity. Appellant makes several drastic errors in his argument on this point.

The basic purpose of the "need" requirement in the immunity statute is to assure that only those criminals whose testimony is vital to the Commonwealth will be immunized against punishment for their crimes. This is primarily a matter between the prosecuting agency and the Judge, and not for appellant's concern. Appellant confuses *this* need with the need for a special Grand Jury. In *McNair's Petition*, 324 Pa. 48, 187 Atl. 498, and in the subsequent cases cited by appellant, *Dauphin County Grand Jury Investigation Proceedings (No. 1)*, 332 Pa. 289, 2 A. 2d 783, and *Special Grand Jury Case*, 397 Pa. 254, 154 A. 2d 592, this Court held that because of their effect on the criminal justice system, grand juries would be allowed to supersede the investigative and prosecutional functions of established Government only in unusual circumstances.

However, appellant is not challenging the need for the Grand Jury, but only the need for the immunity grant. The lower Court, in its excellent Opinion, stated: "Here, the Petition for grant of immunity sets forth a series of events which, if true, indicates that Petitioner was present at the time a bribe was passed by the alleged present head of an organized crime syndicate to a member of the Philadelphia City Council to influence such Councilman's official conduct relating to City control of housing and streets. If so, these assertions go to the heart of part of the Investigating Grand Jury's investigation. The testimony established

a need for the immunity to be granted to Petitioner, . . ."

To further substantiate this need the District Attorney presented Sergeant William Smith, of the Intelligence Unit of the District Attorney's office. Sergeant Smith testified that for over a year he had been investigating transactions relating to the Whitman Urban Renewal Area. He further testified that he had received information that the proposed witness, Mario Riccobene, was a witness to a bribe paid by one Angelo Bruno to a public official of the City of Philadelphia to influence official conduct to benefit land owned by Bruno and others within the Whitman Urban Renewal Area.

The questions asked Riccobene involved the bribe and other dealings and transactions in this area. He refused to answer these questions at the outset by asserting his privilege of immunity from self-incrimination. Clearly the inquiry was closely bound to the subject of the Grand Jury investigation and the immunity was necessary to obtain this testimony.

Riccobene argued that *need* should be demonstrated by reference to the Grand Jury proceedings themselves. This is simply an attempt to invade the secrecy of the Grand Jury. This Court has repeatedly stressed the need for keeping such proceedings secret and has refused to permit such testimony to be divulged unless the evidence introduced was in direct contravention of Constitutional rights. *Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A. 2d 780; see also *Commonwealth v. Brownmiller,* 141 Pa. Superior Ct. 107, 14 A. 2d 907; *Commonwealth v. Kirk,* 141 Pa. Superior Ct. 123, affirmed per curiam, 340 Pa. 346, 17 A. 2d 195.* The

---

* The Federal Courts have consistently upheld the secrecy of the Grand Jury, refusing to disclose its proceedings unless a defendant showed some "particularized need." See *Dennis v. United States,* 384 U.S. 855. No such need is present in this case.

need for the immunity grant was clearly shown by the District Attorney's petition and the testimony of Sergeant Smith. There was no reason to justify any recourse to the Grand Jury proceedings and the Judge did not abuse his discretion in restricting the cross-examination of Sergeant Smith to preserve the secrecy of the Grand Jury proceedings.

Appellant also urges that the petition for immunity is legally inadequate because the statute of limitations has run on the only offense about which Riccobene was questioned, namely, the bribery of a City official. However, it is for the Grand Jury to decide what questions would best elicit information about organized crime. The question may have been intended as a starting point for investigation of more recent dealings with the same people and the same property. The Grand Jury petition itself did satisfy the requirement that the investigation be designed to disclose information concerning and indictments for crimes within the statutory period. The importance of certain prior crimes to the proof of continuing criminal conspiracies and criminal conduct was for the Grand Jury to decide. This Court has no intention of restricting the lawful inquiries of the Grand Jury.

In addition, we note that it was appellant's own complete refusal to cooperate with the Grand Jury which caused it to discontinue the questioning and seek sanctions. Had appellant answered the questions, the answers themselves might well have demonstrated the relationship between the bribe referred to and other matters which are still indictable.

### III. CONTEMPT

Appellant's final contentions concern the citation for civil contempt, entered after his refusal to answer the questions even after immunity had been granted.

Riccobene urges that the sanction of *criminal* contempt *expressly* provided by the Act *is exclusive,* and that his civil contempt sentence is thus beyond the authority of the Court. Because of the conditional nature of the contempt sentence which allowed Riccobene to purge himself of contempt and free himself by testifying before the Grand Jury, it is clearly civil contempt. *Shillitani v. United States,* 384 U.S. 364 (1966). As the Court pertinently said (pages 365, 368, 369-371) : "These consolidated cases again present the difficult question whether a charge of contempt against a witness for refusal to answer questions before a grand jury requires an indictment and jury trial. In both cases, contempt proceedings were instituted after petitioners had refused to testify under immunity granted by the respective District Courts. Neither petitioner was indicted or given a jury trial. Both were found guilty and sentenced to two years' imprisonment, with the proviso that if either answered the questions before his sentence ended, he would be released. . . . *We hold that the conditional nature of these sentences renders each of the actions a civil contempt proceeding, for which indictment and jury trial are not constitutionally required.*

. . .

"We believe that the character and purpose of these actions clearly render them civil rather than criminal contempt proceedings. See Penfield Co. v. Securities & Exchange Comm'n, 330 U.S. 585, 590 (1947). As the distinction was phrased in Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 449 (1911), the act of disobedience consisted solely 'in refusing to do what had been ordered,' i.e., to answer the questions, not 'in doing what had been prohibited.' And the judgments imposed conditional imprisonment for the obvious purpose of compelling the witnesses to obey the [Courts']

orders to testify. When the petitioners carry 'the keys of their prison in their own pockets,' In re Nevitt, 117 F. 448, 461 (C.A. 8th Cir. 1902), the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.' Green v. United States, 356 U.S. 165, 197 (1958) (BLACK, J., dissenting). . . .

"The fact that both the District Court and the Court of Appeals called petitioners' conduct 'criminal contempt' does not disturb our conclusion. Courts often speak in terms of criminal contempt and punishment for remedial purposes. See, e.g., United States v. Onan, 190 F. 2d 1 (C.A. 8th Cir. 1951). 'It is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911). Despite the fact that Shillitani and Pappadio were ordered imprisoned for a definite period, their sentences were clearly intended to operate in a prospective manner—to coerce, rather than punish. As such, they relate to civil contempt. While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify. See Nye v. United States, 313 U.S. 33, 42-43 (1941). *The test may be stated as: what does the court primarily seek to accomplish by imposing sentence? Here the purpose was to obtain answers to the questions for the grand jury.*[5]

"III.

"*There can be no question that courts have inherent power to enforce compliance with their lawful orders*

---

"[5] On the contrary, a criminal contempt proceeding would be characterized by the imposition of an *unconditional sentence* for punishment or deterrence. See Cheff v. Schnackenberg, post, at 377."

*through civil contempt.* United States v. United Mine Workers, 330 U.S. 258, 330-332 (1947) (BLACK and DOUGLAS, JJ., concurring in part and dissenting in part) ; United States v. Barnett, 376 U.S. 681, 753-754 (1964) (GOLDBERG, J., dissenting). *And it is essential that courts be able to compel the appearance and testimony of witnesses.* United States v. Bryan, 339 U.S. 323, 331 (1950). *A grand jury subpoena must command the same respect.* Cf. Levine v. United States, 362 U.S. 610, 617 (1960). Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. McCrone v. United States, 307 U.S. 61 (1939) ; Giancana v. United States, 352 F. 2d 921 (C.A. 7th Cir.), cert. denied, 382 U.S. 959 (1965). The conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, Uphaus v. Wyman, 364 U.S. 388, 403-404 (1960) (DOUGLAS, J., dissenting), provided that the usual due process requirements are met."

The Opinion of the United States Supreme Court in *Shillitani* did *not* involve an interpretation of Rule 42 of the Federal Rules of Criminal Procedure. The lower Courts in that case had held that the defendants were guilty of criminal contempt, and thus their sentences were imposed pursuant to Rule 42, which applies only to criminal contempts. The Supreme Court held that the sentences were for *civil* contempt, which may be imposed under the inherent power of the Court, and only discussed Rule 42 in disapproving the erroneous view of the lower Courts. The issue presented in *Shillitani* involved the distinction between civil and criminal contempt, and the basic principles enunciated therein apply (as is clear from the language of the Court)

equally to every contempt case and every contempt issue, no matter how or from what Court or under what rule the question arose.

In *Brocker v. Brocker*, 429 Pa., supra, the Court pertinently said (page 519): *"The dominant purpose\** and objective of the Court's Order is the *controlling\** factor in the determination of whether the contempt was civil or criminal. Not only is the dividing line between civil and criminal contempt sometimes shadowy or obscure, but the same facts or conduct may constitute or amount to both civil and criminal contempt."

The Court further said (pages 520, 521): "In United States v. United Mine Workers of America, 330 U.S., supra, the Supreme Court held that the trial Court properly found John L. Lewis guilty of indirect criminal contempt and the Union *guilty of both civil and criminal contempt.\** . . . The Court said, inter alia (pages 298-299, 303-304): 'Common sense would recognize that conduct can amount to both civil and criminal contempt. . . . The trial court also properly found the defendants guilty of civil contempt. *Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and* [in some instances] *to compensate the complainant for losses sustained.\** Gompers v. Bucks Stove & Range Co., supra, at 448, 449.' "

To summarize: The power to commit for civil contempt and to punish petty criminal contempts *summarily* may be exercised by the Court, and the Constitutional right of trial by jury does not apply to such contempts. The right of trial by jury applies (a) only to serious crimes where imprisonment for more than six months is authorized, or (b) in cases where no maximum sentence is established by the Legislature but the

---

\* Italics in *Brocker v. Brocker* Opinion.

punishment actually imposed exceeds six months' imprisonment. *Baldwin v. New York,* 399 U.S. 66, 90 S. Ct. 1886 (1970); *Duncan v. Louisiana,* 391 U.S. 145. See also, *Bloom v. Illinois,* 391 U.S. 194; *Cheff v. Schnackenberg,* 384 U.S. 373. Since appellant Riccobene was held and imprisoned for civil contempt, he may be released either (1) upon purging himself of his contempt by testifying before the Grand Jury, or (2) upon the discharge of the Grand Jury, or (3) upon the expiration of the six-month term of imprisonment, whichever first occurs. See *Shillitani v. United States,* 384 U.S., supra.

Appellant lastly argues that he was entitled to a jury trial or at least a hearing on the issue of contempt which occurred in the presence of the Court. Appellant had a hearing on the issue of contempt, and, we repeat, there is no merit in his contention that he was entitled to a jury trial where sentence was for civil contempt. *Shillitani v. United States,* 384 U.S., supra; *Cheff v. Schnackenberg,* 384 U.S., supra. *Bloom v. Illinois,* 391 U.S., supra, upon which appellant relies, is clearly inapplicable and applies only to serious criminal contempts.

It is clear that the lower Court had both legal and Constitutional authority to use its *remedial* power of civil contempt to force compliance with its lawful conditional Order, which required appellant to testify before the Grand Jury.

Order affirmed.

Mr. Justice JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority concludes that the sentence imposed was for civil contempt and that such sentence was proper because courts have the inherent power to use this remedial device to enforce their lawful orders. I

agree with the general statement that a court has the inherent power to enforce its orders through civil contempt citations, but the majority's opinion contains no discussion of the very special and unusual circumstances surrounding this civil contempt citation.

If the Act of November 22, 1968, P. L.     , had not been enacted and if the court below had determined that appellant's assertion of the Fifth Amendment privilege was not proper, then the refusal to answer the submitted question could validly have generated a civil contempt. That, however, is not the posture in which this matter came before the court below. Judge SLOANE affirmed appellant's right to assert his privilege and to refuse to answer the questions. The Attorney General and the District Attorney then sought to invoke Act No. 333 of 1968, and on February 26, 1970 the court decreed that appellant must testify before the grand jury with the immunity provided by that act. On March 6, 1970 appellant was asked the identical questions before the grand jury, and despite the granted immunity he persisted in his refusal to answer. The lower court then held a hearing to determine whether he should be held in contempt of court. The Commonwealth produced evidence of his refusal to answer the questions, and the court then offered him a chance to purge himself of any contempt by answering. After he refused again to answer, asserting his constitutional rights, the court concluded that the grant of immunity removed those rights and imposed its sentence.

There is no question that if the Act of 1968 had not been passed and it is determined that a witness is rightfully asserting his privilege (as here) no sanctions for contempt, either civil or criminal, could be imposed. The problem is to determine the effect of the immunity statute. Section 5 of the act in unmistakable language

states that "Any person who shall refuse or decline to testify . . . after being granted immunity and ordered by the court, shall be guilty of criminal contempt. . . ." Without that statute, the court has no power, inherent or otherwise, to impose any penalties. Therefore, when the legislature enters this field in which courts had no power previously, courts can only be deemed to have the specific power granted to them in the statute. Courts may not exercise their normal inherent powers in this situation because they could not exercise them in the absence of the statute and the legislation does not give them what they otherwise did not possess. The legislature has occupied the field and has prescribed criminal contempt as the only permissible sanction. Certainly the statute might be more effective if civil contempt were a permissible sanction, but we can not supply what the draftsmen have omitted.

In addition, Article III, Section 3 of the Pennsylvania Constitution states "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title. . . ." "The object of that requirement is that legislators, and others interested, shall receive direct notice in immediate connection with the act itself, of its subject, so that they may know or be put upon inquiry as to its provisions and their effect. Suggestions or inferences which may be drawn from knowledge dehors the language used, are not enough. The constitution requires that the notice shall be contained in the title itself." *Commonwealth ex rel. Attorney General v. Samuels,* 163 Pa. 283, 287, 29 Atl. 909 (1894). See also, *Boyertown Burial Casket Co. v. Commonwealth,* 366 Pa. 574, 590, 79 A. 2d 449 (1951). The title to Act No. 333 states "An Act authorizing courts of record to grant witnesses immunity from prosecution for or on account of any matter or thing concerning which they were ordered to testify in a pro-

ceeding before certain grand juries, investigating committees or commissions and courts of record; *making the refusal to testify after such immunity criminal contempt* and providing penalties." (Emphasis supplied) The title is clear in prescribing criminal contempt and criminal contempt alone as the penalty for refusal to answer. If the majority is correct in reading the act to permit a civil contempt citation, the act is unconstitutional under Article III, Section 3 because the title gives absolutely no notice that civil contempt is a permissible sanction.

Finally, the legislative history of Section 5 demonstrates conclusively that criminal contempt is the only permissible sanction. As originally passed by the Senate that section stated "Any person who shall refuse or decline to testify . . . shall be guilty of *contempt.*" (Emphasis supplied). On third reading in the House of Representatives that language was changed from "contempt" to "criminal contempt."

In this case the power to impose a civil contempt penalty is not within the inherent powers of the court because prior to the passage of Act No. 333 the court had no powers, inherent or otherwise. Therefore, the court can be deemed to have only those powers which are enumerated in the act itself, and the sole power given by the act is that of finding the recalcitrant witness guilty of criminal contempt.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

It is my view that the Majority's reliance on *Shillitani v. United States,* 384 U.S. 364, 86 S. Ct. 1531 (1966) is misplaced. That case is only concerned with interpreting Rule 42 of the Federal Rules of Criminal Procedure, and, as such, is based on the United States

Supreme Court's supervisory powers over the federal judiciary and is only applicable to the federal courts. There is no indication that the definitions therein set forth of civil contempt and criminal contempt are Constitutionally required, or that state statutes regulating civil and criminal contempt are unconstitutional if not in precise conformity therewith. We are therefore bound to follow Pennsylvania statutory law regulating a court's use of the contempt power, and need not feel obligated to abandon our case law interpreting the same.

There is no question that courts have always possessed the inherent power to enforce their orders and decrees by imposing penalties and sanctions for failure to obey or comply therewith: *Brocker v. Brocker*, 429 Pa. 513, 241 A. 2d 336 (1968). The crucial issue is the manner in which the court, in a given situation, may exercise such inherent right, i.e., by the use of civil contempt or criminal contempt.

The dominant purpose of a contempt proceeding determines whether it is civil or criminal: *Brocker v. Brocker*, supra; *Knaus v. Knaus*, 387 Pa. 370, 127 A. 2d 669 (1956). The purpose of a civil contempt proproceeding is remedial, and judicial sanctions are employed to coerce the defendant into compliance with the court's order and, in some instances, to compensate the complainant for losses sustained: *Brocker v. Brocker*, supra; *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, 392 Pa. 500, 140 A. 2d 814 (1958); *Knaus v. Knaus*, supra. Where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a *private party,* proceedings to enforce compliance with the decree are civil in nature: *Brocker v. Brocker,* supra; *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.,* su-

pra; *Knaus v. Knaus*, supra. The factors generally said to point to a civil contempt are these: (1) Where the complainant is a *private person* as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a *private party*; (4) where relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion: *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, supra; *Knaus v. Knaus*, supra.

The dominant purpose of a criminal contempt proceeding is to vindicate the dignity and authority of the court and to protect the interests of the *general public*: *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, supra. Criminal contempts are divided into direct and indirect contempts: *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, supra; *Knaus v. Knaus*, supra. A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto, as to interfere with its immediate business, and punishment for such contempts may be inflicted summarily: Act of June 16, 1836, P. L. 784, §§23, 24, 17 P.S. §§2041, 2042; *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, supra; *Knaus v. Knaus*, supra. An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court, and is regulated by the Act of June 23, 1931, P. L. 925, 17 P.S. §§2047, 2048; *Philadelphia Marine Trade Assn. v. International Longshoremen's Assn.*, supra; *Knaus v. Knaus*, supra.

The grand jury is an arm of the criminal court: *Shenker v. Harr,* 332 Pa. 382, 2 A. 2d 298 (1938); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936). When a witness refuses to testify before a grand jury, notwithstanding statutory immunity or constitutional protection, and is brought before the court, directed to answer on proper notice, and refuses in open court to answer proper questions, a *criminal* contempt is committed in the presence of the court which may be punished summarily: *Commonwealth v. Butler,* 171 Pa. Superior Ct. 350, 90 A. 2d 838 (1952).

Such are the consequences prescribed in Section 5 of the Act of November 22, 1968, P. L.    , 19 P.S. §640.5, which states: "Any person who shall refuse or decline to testify or produce evidence of any other kind after being granted immunity and ordered by the court, shall be guilty of *criminal contempt,* and upon conviction thereof, shall be sentenced to pay a fine of not exceeding one thousand dollars ($1,000), or to undergo imprisonment for a period not exceeding one year, or both." (Emphasis added.) Thus, under the specific statute granting immunity and under the case law in Pennsylvania, the proper sanction prescribed and mandated for the court to enforce its order in this situation was criminal contempt.

The lower court, in conformity with the statute, decreed that appellant must testify before the grand jury with the immunity provided by that act. He was asked the identical questions as previously before the grand jury, and, despite the granted immunity, he persisted in his refusal to answer. A hearing was held to determine whether he should be held in contempt of court, at which time the Commonwealth produced evidence of his refusal to answer the questions and the appellant was given an opportunity to purge himself of the contempt by answering. Appellant refused. The lower

court thereafter found appellant guilty of "civil contempt" and ordered him committed to the County Prison "for a period of six months unless he shall sooner purge himself before testifying before the said Grand Jury whereupon he shall be released." This was error.

As indicated above, the misconduct of the appellant in the presence of the court gives rise to a sanction of direct criminal contempt. For direct criminal contempt, committed in open court, punishment of imprisonment for a definite time is imposed, and commitment of contemnors until they purge themselves of the contempt is without authority of law and a nullity: *Rosenberg Appeal,* 186 Pa. Superior Ct. 509, 142 A. 2d 449 (1958). However, an order which confined a person for direct criminal contempt "for the period of one year or until the further order of the court" was valid as a confinement for the definite period of one year, since the additional language was considered as surplusage: *In Re: Donald MacDonald,* 110 Pa. Superior Ct. 352, 168 A. 521 (1933).

I feel that the order of the lower court in this case met the requirement of imprisonment for a definite time, six months, so as to comply with Section 5 of the Act of November 22, 1968, supra, and the addition of the opportunity of the appellant to purge himself of the contempt did not nullify the order. It in no way harmed the appellant and, at the same time, facilitated the possible enforcement of the court's order that the appellant testify before the grand jury, which is for the benefit of the public and consistent with the purposes of criminal contempt. However, the mere finding of the appellant in "civil contempt" rather than criminal contempt in this case was of major consequence even though the sanction actually given was for criminal contempt. As a result, the appellant was thereby denied a right to trial by jury, as is now required under

*Baldwin v. New York,* 399 U.S. 66, 90 S. Ct. 1886 (1970) and was implicit under *Bloom v. Illinois,* 391 U.S. 194, 88 S. Ct. 1477 (1968) ; *Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444 (1968) and *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S. Ct. 1523 (1966). Although the sentence actually here imposed was only six months, the statute authorized a maximum sentence of one year imprisonment, considerably longer than that permissible without a right to trial by jury.

I therefore would reverse the order of the court below but without prejudice to the Commonwealth to proceed to prosecute the appellant for criminal contempt in accordance with the requirements of due process.